MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 42
Docket:        Kno-14-328
Argued:        April 8, 2015
Decided:       April 23, 2015

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and CLIFFORD, JJ.

GEORGE JENNINGS

v.

CHRISTOPHER K. MACLEAN

MEAD, J.

[¶1]  George Jennings appeals from a summary judgment entered by the Superior Court (Knox County, *Horton, J.*) in favor of Christopher K. MacLean, an attorney practicing in Maine, on Jennings's complaint alleging abuse of process. Jennings asserts that after MacLean obtained a money judgment against him on behalf of a client, MacLean improperly sent a letter and copies of documents related to the judgment to an attorney handling an unrelated real estate closing in a successful attempt to have Jennings's share of the proceeds withheld.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The relevant facts in the summary judgment record are undisputed. Christopher MacLean was counsel to John Jennings, and then to his estate, in a suit against John's conservator and John's brother George, who signed a surety bond

2

for the conservator. The suit resulted in a $58,403.67 judgment against George Jennings (hereinafter Jennings); we affirmed the judgment on direct appeal. *Estate of Jennings v. Cumming*, 2013 ME 103, 82 A.3d 132. On behalf of his client, MacLean obtained a writ of execution for the judgment amount plus interest and fees, totaling $65,187.46, and later obtained a turnover and sale order for Jennings's Camden residence. Both documents were filed in the Knox County Registry of Deeds.

[¶3] In a transaction unrelated to John's lawsuit, a limited liability company (LLC) of which Jennings was a member sold a piece of commercial real estate in Camden in August 2013. Two days before the closing, MacLean sent a letter to Attorney Christopher Hardy, who was handling that closing. The letter, which included copies of the writ and the turnover order, advised Hardy that Jennings owed a judgment debt to his brother's estate and stated:

> Any funds under your possession or control in which George Jennings has an interest should be segregated and placed in escrow pending a further turnover order by the court. Should you disburse the funds to George Jennings, thereby rend[er]ing them unavailable to the estate of John Jennings, you may be subject to liability for the same, and you may be deemed to be in breach of fiduciary obligations.

As a result of receiving the letter advising him that MacLean would seek a new turnover order from the court concerning the LLC sale, Hardy withheld Jennings's

share of the proceeds from the sale pending either a release from John's estate or further court order.

[¶4] Jennings filed a two-count complaint against MacLean in the Superior Court, asserting that the letter and its attachments constituted abuse of process and seeking punitive damages. MacLean moved for summary judgment on the grounds that (1) the letter did not constitute legal process, (2) it was sent for a proper purpose, and (3) there was no showing that he had any ulterior motive in sending it. The court granted the motion and entered summary judgment for MacLean, awarding him his costs. This appeal followed.

## II. DISCUSSION

[¶5] We review the court's grant of summary judgment de novo, considering the evidence in the light most favorable to Jennings as the nonmoving party to see whether "the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Angell v. Hallee*, 2014 ME 72, ¶ 16, 92 A.3d 1154 (quotation marks omitted). MacLean, as the defendant and moving party, had the initial burden to "establish that there is no genuine dispute of fact and that the undisputed facts would entitle him to judgment as a matter of law." *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 8, 105 A.3d 439. The burden then shifted to Jennings "to make out [a] prima facie case [of abuse of process] and demonstrate that there are disputed facts." *Id.*

4

[¶6]  The court found that no genuine issue of material fact existed, a finding that Jennings does not contest.  Accordingly, the dispositive issue is whether Jennings made out a prima facie case of abuse of process sufficient to deny MacLean summary judgment.  There are two elements to a claim of abuse of process: "(1) the use of process in a manner improper in the regular conduct of the proceeding, and (2) the existence of an ulterior motive."  *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 38, 41 A.3d 551 (quotation marks omitted).  On this record, Jennings failed to establish a prima facie case for either element.

[¶7]  First, MacLean did not employ any process, and did nothing improper, when he sent the letter to Hardy.  We have cited as examples of the improper use of process for purposes of this tort the "misuse [of] individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed," and "the misuse of the procedures for obtaining a lien."  *Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189 (citations omitted).

[¶8]   Here, MacLean sent a letter to an attorney and attached as substantiation for its contents copies of a court's judgment and a turnover order that had been completed and were a matter of record.  Notwithstanding Jennings's argument to the contrary, MacLean's letter did not involve any "process" because it was not a legal procedure, even though it suggested that a second turnover order—a procedure entirely proper in the regular course of attempting to collect on

a judgment—would be sought from the court. Unlike a true instrument of legal process, the letter did not purport to compel Hardy to perform any legal obligation, and he was free to ignore it if he thought that MacLean was wrong concerning his professional responsibilities.

[¶9] Second, Jennings makes no showing that MacLean had any ulterior motive in sending the letter, relying only on a conclusory assertion that "[a]n improper motive can be imputed to MacLean by implication from the facts of the abuse." As the attorney for John's estate, MacLean had a professional duty to pursue lawful avenues to collect on the judgment that his client had obtained. He did so in this case by an unremarkable method—sending an advisory letter to an attorney conducting a real estate closing who might have control of assets that could satisfy the judgment. There is nothing in the record to suggest that MacLean had anything to gain from having Jennings's share of the sale proceeds held in escrow beyond securing another installment toward satisfying the judgment debt that his client was owed.

[¶10] Because Jennings failed to make out a prima facie case for either of the elements of his claim for abuse of process, the court properly entered summary judgment for MacLean.

The entry is:

Judgment affirmed.

**On the briefs and at oral argument:**

David Glasser, Esq., Camden, for appellant George Jennings

Joseph W. Baiungo, Esq., Belfast, for appellee Christopher K. MacLean

Knox County Superior Court docket number CV-2013-31
FOR CLERK REFERENCE ONLY